UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
                                        )
PRAKASH BATTINENI et al.,               )
                                        )
            Plaintiffs,                 )
                                        )
     v.                                 )        Civil Action No. 22-1332 (PLF)
                                        )
ALEJANDRO N. MAYORKAS,                  )
Secretary of Homeland Security, et al., )
                                        )
            Defendants.                 )
_____)

OPINION

  Through the EB-5 visa program, the United States Citizenship and Immigration Services ("USCIS") issues immigration visas to eligible non-citizens who make qualifying investments in the United States. When Prakash and Rakesh Battineni applied for EB-5 visas, USCIS denied their applications after determining that they had not adequately demonstrated the lawful source of their investment capital. The Battinenis ask the Court to reverse the agency's decisions, arguing that they were arbitrary and capricious, and not supported by substantial evidence. After carefully reviewing the administrative record, the Court concluded that USCIS's decision as it relates to Prakash Battineni was unreasonable. It further concluded that the decision with respect to Rakesh Battineni was supported by substantial evidence. The Court therefore granted the Battinenis's Motion for Summary Judgment [Dkt. No. 20] in part and denied in part. See September 30, 2024 Order [Dkt. No. 33]. As to the decision with respect to

Prakash Battineni, it has vacated USCIS's decision and remanded to the agency for further proceedings consistent with this Opinion.  See id.[1]

## I. BACKGROUND

### A. Statutory Background

The Immigration and Nationality Act provides EB-5 "'employment creation' visas to prospective immigrants seeking to engage in a new commercial enterprise in the United States."  Huashan Zhang v. USCIS, 978 F.3d 1314, 1316 (D.C. Cir. 2020) (citing 8 U.S.C. § 1153(b)(5)).  Pursuant to regulations implementing 8 U.S.C. § 1153(b)(5), a foreign investor seeking an EB-5 visa must provide evidence that he or she "has invested or is actively in the process of investing lawfully obtained capital in a new commercial enterprise in the United States" that will create at least ten full-time positions for qualifying United States workers.  See 8 C.F.R. § 204.6(j).  The burden of proof in an adjudication of an EB-5 visa application rests with the petitioning investor, who must establish by a preponderance of the evidence that he or she is fully qualified.  See 8 U.S.C. § 1361; 8 C.F.R. § 103.2(b)(1); Matter of Chawathe, 25 I. & N. Dec. 369, 375 (2010).  The preponderance of the evidence standard requires that the

---

[1]     The Court has reviewed the following papers in connection with this matter: Plaintiffs' Complaint for Declaratory Judgment ("Compl.") [Dkt. No. 1]; Joint Status Report ("JSR") [Dkt. No. 12]; Plaintiffs' Second Amended Complaint for Declaratory Judgment ("Am. Compl.") [Dkt. No. 16]; Plaintiffs' Motion for Summary Judgement ("Pls.' MSJ") [Dkt. No. 20]; Pls.' MSJ, Exhibit A ("Prakash AR") [Dkt. No. 20-1]; Pls.' MSJ, Exhibit B ("Rakesh AR") [Dkt. No. 20-2]; Defendants' Memorandum of Points and Authorities in Support of Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment ("Gov't MSJ") [Dkt. No. 22-1]; Plaintiffs' Reply and Cross-Response Memorandum ("Pls.' Reply") [Dkt. No. 25]; Reply in Support of Cross-Motion for Summary Judgment ("Gov't Reply") [Dkt. No. 27]; Defendants' Supplemental Memorandum ("Gov't Supp. Mem.") [Dkt. No. 29]; Plaintiffs' Supplemental Memorandum ("Pls.' Supp. Mem.") [Dkt. No. 30]; Notice of Supplemental Authority ("Gov't Not. of Supp. Authority") [Dkt. No. 31]; and Plaintiffs' Response to Notice of Supplemental Authority ("Pls.' Response to Supp. Authority") [Dkt. No. 32].

evidence demonstrates that the applicant's claim is "'probably true,' where the determination of 'truth' is made based on the factual circumstances of each individual case." Matter of Chawathe, 25 I. & N. Dec. at 376. When reviewing an application under this standard, the USCIS officer must "examine each piece of evidence for relevance, probative value, and credibility, both individually and within the context of the totality of the evidence, to determine whether the fact to be proven is probably true." Id.

Under the regulations implementing the EB-5 visa program, "[a]ssets acquired, directly or indirectly, by unlawful means . . . shall not be considered capital" and therefore cannot give rise to a qualifying investment. See 8 C.F.R. § 204.6(e). To "show" that the "capital" was "obtained through lawful means," the regulations set forth the types of financial documents that, "as applicable," the foreign investor must include with the application. See 8 C.F.R. §§ 204.6(j)(3)(i-iv). These documents include: (i) foreign business registration records; (ii) corporate, partnership, and personal tax returns filed within five years of filing the petition; (iii) evidence identifying other sources of capital; and (iv) certified copies of judgments and evidence of all pending criminal, civil, or administrative actions involving monetary judgments against the investor within fifteen years of filing the petition. Id.

## B. Factual Background

In October 2016, Prakash and Rakesh Battineni – brothers and Indian nationals – both filed petitions for EB-5 visas, called "I-526 petitions." Prakash AR 3143; Rakesh AR 2928; see Rakesh AR at 634; Am. Compl. ¶¶ 4, 5.[2] Prakash and Rakesh claimed eligibility for the visas based on investments made through the Regional Center Program – a

---

[2]   For clarity, the Court will refer to each plaintiff by his first name.

method of qualifying investment through which "EB-5 petitioners 'pool[] their investments with 1 or more qualified immigrants' into 'a regional center in the United States, which has been designated by the Secretary of Homeland Security on the basis of a proposal for the promotion of economic growth, including prospective job creation and increased domestic capital investment.'" Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 335 (D.C. Cir. 2023) (alteration in original) (quoting 8 U.S.C. § 1153(b)(5)(E)(i)); see Prakash AR 3143; Rakesh AR 2928. The regional center that the Battinenis invested in proposed to pool $29 million from fifty-eight immigrant investors and lend these funds to an entity that would build and operate apartment units and commercial space in Washington, D.C. Prakash AR 3143; Rakesh AR 2928.

The Battinenis each invested $500,000 in this regional center. Prakash AR 3143; Rakesh AR 2928. They asserted in their petitions that these funds derived from the sale of EDGE IT Corp., an IT services company that they co-founded together with a third individual in 2014. Prakash AR at 1209; Rakesh AR 634, 827. Prakash and Rakesh founded this company with the help of loans from an individual named Gopala Seelamneni. Prakash AR at 1209; Rakesh AR at 827-28. According to the Battinenis, Mr. Seelamneni loaned each of them $40,000. Id. Prakash and Rakesh then used $10,000 of their respective loans to each purchase a 45% ownership stake in EDGE IT, and each loaned the remaining $30,000 of their loans to the company. Am. Compl. ¶¶ 60-61; Prakash AR at 1209; Rakesh AR at 827. The Battinenis assert that EDGE IT grew quickly. Am. Compl. ¶ 62; Rakesh AR at 634. In 2016, they sold the company for $2 million. Am. Compl. ¶ 67; Rakesh AR at 634. According to the Battinenis, because of their respective ownership stakes, they each received $900,000 from this sale. Am. Compl. ¶ 68; Rakesh AR at 634. It was from this $900,000 that Prakash and Rakesh each drew

the $500,000 that they invested in the regional center that formed the basis for their I-526 petitions.  Rakesh AR at 634; Prakash AR at 3146.

### 1.  Prakash Battineni's Petition

Prakash filed his I-526 petition on October 20, 2016.  Prakash AR at 3143.  On June 14, 2018, Prakash requested that USCIS expedite his petition on humanitarian grounds. Prakash AR at 1607; Am. Compl. ¶ 26.  The agency approved his request to expedite the review of his petition, and on July 25, 2018, issued a Request for Evidence notifying Prakash of deficiencies in his application.  Am. Compl. ¶¶ 27, 28; see Prakash AR at 926-32, 1607.  USCIS told Prakash that his initial submission did not sufficiently establish that his EB-5 investment funds had been obtained through lawful means.  Prakash AR at 930-31.  The Request for Evidence stated that Prakash "has not shown, by a preponderance of the evidence, the lawful source of funds used to fund EDGE IT Corp" and pointed out that Prakash had submitted no documentation confirming that the $40,000 he received from Mr. Seelamneni was actually a loan.  Prakash AR at 930.  The agency also found a lack of documentation showing the source of the funds Prakash used to repay this loan.  Id.  USCIS further questioned Prakash's asserted relationship with EDGE IT given his simultaneous full-time employment with another company. Id.

On September 28, 2018, Prakash responded to the Request for Evidence with additional documents relating to Mr. Seelamneni's loan, the sale and value of EDGE IT, and his employment income.  See Prakash AR at 1607, 3144-45.  These documents included a photocopy of a $40,000 check from Mr. Seelamneni with the words "hand loan" written on it. Id. at 3145; see id. at 788.  On October 10, 2019, Prakash (along with Rakesh) filed a mandamus action in this Court seeking an order requiring USCIS to adjudicate his I-526 petition.  Am.

Compl. ¶ 30; see Battineni v. McAleenan, Civil Action No. 19-3035 (TNM), Complaint

(D.D.C. Oct. 10, 2019).  On December 12, 2019, USCIS issued a Notice of Intent to Deny

Prakash's petition.  See Prakash AR 1178-85.  The agency pointed out that there was still no

documentation of Mr. Seelamneni's loan in the record aside from the $40,000 check and that

Prakash had not submitted evidence of the source of Mr. Seelamneni's loan funds.  Id. at 1183.

USCIS also found various discrepancies in the evidence Prakash did submit – including

discrepancies related to EDGE IT's repayment of the purported $30,000 loan Prakash made to

the company, the sale of EDGE IT, and Prakash's employment.  Id. at 1183-85.

On January 15, 2020, Prakash responded to the Notice of Intent to Deny with a

sworn statement explaining that the discrepancies relating to the sale of EDGE IT were due to his

and his brother's inexperience with starting companies and their use of template incorporation

documents.  Prakash AR at 1209-10; see id. at 3143; Am. Compl. ¶ 32.  He also explained that,

although only $30,000 of the $40,000 he gave EDGE IT was a loan, the company inadvertently

returned the full $40,000 to him.  Prakash AR at 1209.  Prakash submitted further documentation

to corroborate earlier statements related to the loan from Mr. Seelamneni, including open-source

information about Mr. Seelamneni's federal employment and salary.  Id. at 3145.  USCIS denied

Prakash's petition on May 7, 2020.  See id. at 1358-67.  The agency reiterated that Prakash had

not demonstrated that he had in fact received the funds from Mr. Seelamneni in the form of a

loan and that there was insufficient evidence of the source of these funds.  Id. at 1364-65.

USCIS also continued to question Prakash's assertions about EDGE IT.  Id. at 1365-66.

On August 24, 2020, Prakash filed a motion to reopen and reconsider his petition.

Prakash AR at 1591.  Along with this motion, Prakash attached another statement.  See id. at

1408-10.  This statement attributed the discrepancies and lack of documentation related to Mr.

Seelamneni's loan and the sale of EDGE IT to the trust-based culture of Indian business relations.  Id. at 1408-09.  Prakash also attached further documentation related to Mr. Seelamneni's loan, including a letter from Mr. Seelamneni.  See id. at 1427-95.  In this letter, Mr. Seelamneni stated that, while there was no written loan agreement, he loaned $40,000 to Prakash in 2015, which Prakash repaid in the same year.  Id. at 1427.  Mr. Seelamneni maintained that the loan funds originated from his and his wife's employment income, which was deposited in his Federal Digital Credit Union ("DCU") account.  Id.  From this income, he and his wife "made investments in securities/stocks and properties."  Id.  Mr. Seelamneni further stated:

> I made a loan to Mr. Prakash Battineni using the funds in my Wells Fargo account.  This is the account in which I get rental deposits from my properties and other investments.  For example, I closed out a brokerage account from which $107,412 was transferred on January 27, 2015 into my Wells Fargo account.  Since I closed out my brokerage account in 2015, I no longer have access to the statements.  Also, on March 31, 2015 I also had a cash transfer of $14,450 from my credit card into my account.  The deposits that are not redacted are rental proceeds deposited into this account.

Id.  Mr. Seelamneni attached his 2014 W-2 and several partially redacted 2015 bank statements from his DCU and Wells Fargo accounts.  See id. at 1429-95.

On May 21, 2021, USCIS denied Prakash's motion to reopen and reconsider. Prakash AR at 1589.  The agency wrote that the new evidence submitted by Prakash still failed to establish that his investment funds derived from lawful sources.  Id. at 1592.  Mr. Seelamneni's letter and bank statements did not solve the previously identified problems because they did not "show the source of the [$107,412 and $14,450] deposits" into the Wells Fargo account – the account from which Mr. Seelamneni drew the funds he loaned to Prakash.  Id. at 1593.  With regard to Mr. Seelamneni's asserted rental deposits, USCIS found that Prakash

"fail[ed] to submit corroborating documentation proving [Mr. Seelamneni's] ownership of these properties and the actual sources of these deposits." Id. The agency rejected Prakash's argument that it had erred in denying his petition, stating that "[t]he record must trace the path of the funds back to a lawful source" and that Prakash "only provided open source documentation regarding [Mr. Seelamneni's] employment which failed to actually show that the $40,000 loan to Petitioner was sourced from the alleged deposits of this income in the account from which the check was provided to Petitioner." Id. at 1594.

On May 13, 2022, the Battinenis filed this lawsuit. See Compl. On November 7, 2022, USCIS reopened Prakash's petition. Prakash AR at 3143; see JSR at 2-3. The agency then issued another Notice of Intent to Deny. See Prakash AR at 1596-1606. In it, USCIS described site visits to Prakash's employer and to EDGE IT. Id. at 1600-04. These site visits raised general concerns about the information Prakash had provided to the agency. Id. at 1601, 1604. USCIS also reiterated its concern that Prakash did not trace the loan funds from Mr. Seelamneni to a lawful source. Id. at 1604-05. In response, Prakash submitted additional documentation related to EDGE IT and to Mr. Seelamneni. Id. at 1607-17, 3146. As evidence that Mr. Seelamneni's loan funds were derived from lawful sources, Prakash pointed to open-source information indicating that Mr. Seelamneni's federal jobs required background checks and that Mr. Seelamneni had worked with the Financial Crimes Enforcement Network, a division of the Department of the Treasury dedicated to combatting money laundering and related crimes. Id. at 1616.

On June 29, 2023, USCIS issued its final denial. See Prakash AR at 3141-48. The denial primarily discussed Mr. Seelamneni's loan, reiterating that Prakash did not sufficiently demonstrate that the funds were actually a loan. Id. at 3146-47. The agency also

stated that while "[e]vidence submitted by Petitioner showed that Seelamneni was employed by the U.S. Office of Personnel Management, . . . there was insufficient evidence demonstrating the path of funds from Seelamneni's employment income to Petitioner's bank account." Id. at 3146. USCIS rejected Prakash's argument that "there was a 'strong presumption' that Mr. Seelamneni's funds were lawfully earned since he is a federal employee subject to extensive background checks and had a federal job for a long enough time that a reasonable person would conclude that he could have amassed $40,000 to make the initial loan" because "[n]o other documentary evidence was provided." Id. at 3147.

### 2.  Rakesh Battineni's Petition

Rakesh filed his I-526 petition on October 25, 2016.  Rakesh AR at 2928.  On November 21, 2018, Rakesh requested that USCIS expedite his petition on humanitarian grounds.  Rakesh AR at 1427; Am. Compl. ¶ 43.  The agency denied his request.  Rakesh AR at 1427; Am. Compl. ¶ 44.  On October 10, 2019, Rakesh (along with Prakash) filed a mandamus action in this Court seeking an order requiring USCIS to adjudicate his I-526 petition.  Am. Compl. ¶ 45; see Battineni v. McAleenan, Civil Action No. 19-3035 (TNM), Complaint (D.D.C. Oct. 10, 2019).  On December 12, 2019, USCIS issued a Request for Evidence informing Rakesh that he had not sufficiently established that his EB-5 investment funds had been obtained through lawful means.  See Rakesh AR at 2928.  The agency questioned the source of the $40,000 that Rakesh asserted he used to co-found EDGE IT.  Id.; see id. at 634.

On March 19, 2020, Rakesh responded to the Request for Evidence with additional documents relating to Mr. Seelamneni's loan, the sale and value of EDGE IT, and his employment income.  See Rakesh AR at 2928-30.  These documents included open-source information about Mr. Seelamneni's federal employment and salary.  Id. at 2929-30.  Rakesh

9

also submitted a sworn statement that largely mirrored the statement Prakash submitted in response to USCIS's Notice of Intent to Deny his own petition.  See id. at 827-28.  Rakesh's statement also said that only $33,000 of Mr. Seelamneni's loan came from Mr. Seelamneni himself, and that the rest "came in as a cashiers check from Mr. Ravi Bhupatiraju," an individual that Rakesh did not know.  Id.  Rakesh stated that he was told by Mr. Seelamneni that $7,000 of the loan was coming from Mr. Bhupatiraju because Mr. Bhupatiraju owed Mr. Seelamneni that amount, and that Rakesh should therefore repay the full $40,000 to Mr. Seelamneni.  Id.  Rakesh submitted photographs of a $7,000 cashier's check made out to him from Mr. Bhupatiraju and of a $33,000 check made out to him from Mr. Seelamneni.  Id. at 830.  USCIS denied Rakesh's petition on May 7, 2020, finding, among other things, that the $7,000 cashier's check from Mr. Bhupatiraju was not sufficient evidence that the funds from Mr. Bhupatiraju could be traced to lawful sources.  Id. at 1411.

On August 24, 2020, Rakesh filed a motion to reopen and reconsider his petition. Rakesh AR at 1410.  Along with this motion, Rakesh attached another statement, which largely mirrored the statement Prakash had submitted along with his own motion to reopen and reconsider.  See id. at 1253-55.  Rakesh also attached documentation related to Mr. Seelamneni's loan, including letters from Mr. Seelamneni and Mr. Bhupatiraju.  See id. at 1274-75, 1348.  Mr. Seelamneni stated that he loaned $40,000 to Rakesh in 2015 and that Rakesh repaid the loan in the same year.  Id. at 1274.  Mr. Seelamneni also stated that there was no written loan agreement and that the loan funds originated from his and his wife's employment income, which was deposited in his DCU account.  Id.  From this income, he and his wife "made investments in securities/stocks and properties."  Id.  Mr. Seelamneni further stated:

> I made the loan to Mr. Rakesh Battineni using the funds from my
> DCU account.  I would like to explain some of the activities in this

account.  As you will note, on January 30, 2015 I received $50,000 from my Wells Fargo account.  I closed out a brokerage account from which $107,412 was transferred on January 27, 2015 into my Wells Fargo account.  I further transferred $50,000 from my Wells Fargo account to my DCU account.  Since I closed out my brokerage account in 2015, I no longer have access to the statements.

Furthermore, on March 30, 2015, I received $25,000 in my DCU account.  I had provided a loan of $25,000 to my friend Mr. Srinivasu Kaja and he returned this loan to my DCU account.  This is a friend I have known for 23 years and I don't have a written loan agreement with him, but I am including his DCU bank statement that shows repayment of the loan of $25,000.

Using a combination of the above funds accumulated in my DCU account, I gave a loan of $40,000 to Mr. Rakesh Battineni.  I also confirm that he has repaid the loan of $40,000 as shown by the deposit in my bank account.  I have included documentation to show loan withdrawal of $33,000.  But it's been over 5 years since I made the loan and I don't recall the details regarding the balance [of] $7,000.  However, I confirm that I gave him a loan of $40,000.

Id. at 1274-75.  Mr. Seelamneni attached his 2014 W-2 and several partially redacted 2015 bank statements from his DCU and Wells Fargo accounts.  See id. at 1277-1343.

The letter from Mr. Bhupatiraju that Rakesh submitted stated:

This is to confirm that I, Ravi Bhupatiraju[,] had provided a cashier's check for $7000 to Rakesh Battineni on April 6th, 2015.  I owed $7000 to Gopala K Seelamneni and gave that amount to Rakesh Battineni as per the instructions of Mr. Seelamneni.  The source of funds for the loan were my savings from my employment at (Geico in 2015), where I was employed from 04/2013 to 05/2015 as a (Software Developer in 2015).  The loan was given from my income from lawful earnings accumulated in my Bank of America account.  I closed out this Bank of America account about 2 to 3 years ago and don't have the statements from 5 years ago.

Id. at 1348.  Rakesh also submitted an image of a check made out to Mr. Bhupatiraju, from Geico, for $5,993.38, id. at 1349, as well as bank statements from a DCU account belonging to Srinivasu Kaja.  Id. at 1345-46.

On May 21, 2021, USCIS denied Rakesh's motion to reopen and reconsider. Rakesh AR at 1408-14.  The agency wrote that the new evidence submitted by Rakesh still failed to establish that his investment funds derived from lawful sources, id. at 1410, in part because "[t]he record does not contain sufficient evidence to demonstrate that Mr. Bhupatiraju received adequate income from his employment to provide a $7,000 loan, that taxes were paid on the employment income, or that he actually accumulated and maintained his employment income and used the employment income as the source of the loan to Petitioner." Id. at 1412.  USCIS also noted the discrepancy between the amount Mr. Bhupatiraju sent to Rakesh as part of Mr. Seelamneni's loan ($7,000) and the amount of the check from Geico ($5,993.38).  Id. at 1411-12. The agency rejected Prakash's argument that it had erred in denying his petition, stating that "Petitioner only supplied Mr. Bhupatiraju's cashier's check to Petitioner as proof of his lawful funds without providing anything further," and that "the cashier's check on its own was insufficient to establish the lawfulness of Mr. Bhupatiraju's funds without tracing them back to a lawful source." Id. at 1413, 2928.

On May 13, 2022, the Battinenis filed this lawsuit.  See Compl.  On November 7, 2022, USCIS reopened Rakesh's petition.  Rakesh AR at 1417; see JSR at 2-3.  On December 23, 2022, USCIS issued another Notice of Intent to Deny.  See Rakesh AR at 1415-26.  In it, USCIS described site visits to Rakesh's employer and to EDGE IT.  Id. at 1420-1424.  These site visits raised general concerns about the information Rakesh had provided to the agency.  Id. at 1421, 1424.  USCIS also stated that Rakesh did not trace the loan funds from Mr. Seelamneni or Mr. Bhupatiraju to lawful sources.  Id. at 1424.  The agency wrote:

> Upon reopening of the petition, USCIS has reviewed the evidence
> currently in the record and finds that Petitioner has not sufficiently
> demonstrated the source of the $7,000 received from Bhupatiraju.
> Bhupatiraju asserts that he derived the transferred funds through his

employment income.  As evidence of his employment, Bhupatiraju submitted a copy of a check from GEICO dated February 27, 2015 for $5,993.38.  However, the evidence does not sufficiently demonstrate that Bhupatiraju accumulated and maintained his employment income, or the path of the funds from the asserted employment income to the transfer to Petitioner.

Id.

The Notice of Intent to Deny further explained that the $33,000 that came directly from Mr. Seelamneni could not be traced to lawful sources because the funds transferred from Mr. Seelamneni's closed brokerage account to his DCU account appeared to have no longer been in the account at the time Mr. Seelamneni made his loan to Rakesh.  Id. at 1425.  In addition, there was no evidence showing the source of the $25,000 that Srinivasu Kaja transferred to Mr. Seelamneni's DCU account, and the numerous redactions in Mr. Seelamneni's DCU statements made it unclear how much of the salary deposits in the account went towards Rakesh's loan.  Id. "Based on all the evidence in the record," the agency wrote, "Petitioner has not sufficiently demonstrated the source of the $33,000 from Seelamneni or the $7,000 from Bhupatiraju, which were ultimately the source of Petitioner's funds invested in the [new commercial entity]."  Id.  In response, Rakesh submitted additional documentation related to EDGE IT.  Id. at 1430-31, 2930-31.  As evidence that Mr. Seelamneni's loan funds were derived from lawful sources, he also pointed to open-source information indicating that Mr. Seelamneni's federal jobs required background checks and that Mr. Seelamneni had worked with the Financial Crimes Enforcement Network, a division of the Department of the Treasury dedicated to combatting money laundering and related crimes.  Id. at 1436.

On June 29, 2023, USCIS issued its final denial.  See Rakesh AR at 2926-33.  The denial primarily discussed Mr. Seelamneni's loan, including the portion from Mr. Bhupatiraju.  Id. at 2931-32.  The denial reiterated that Rakesh had not sufficiently demonstrated the source of

the funds loaned to him.  Id.  USCIS rejected Rakesh's argument that "there was a 'strong presumption' that Mr. Seelamneni's funds were lawfully earned since he is a federal employee subject to extensive background checks and had a federal job for a long enough time that a reasonable person would conclude that he could have amassed $40,000 to make the initial loan" because "[n]o other documentary evidence was provided."  Id. at 2932.

On July 26, 2023, the Battinenis filed an amended complaint seeking a declaratory judgment that USCIS's denials of their I-526 petitions were arbitrary and capricious, and asking the Court to order USCIS to re-adjudicate the petitions.  Am. Compl. ¶ 103.  In December 2023 and January 2024, the parties cross-moved for summary judgment.  See Pls.' MSJ; Gov't MSJ.  The Court heard oral argument on April 12, 2024.  At the Court's request, the parties have filed supplemental memoranda.  See Gov't Supp. Mem.; Pls.' Supp. Mem.

## II.  STANDARD OF REVIEW

"[W]hen a party seeks review of agency action under the [Administrative Procedure Act ("APA")] . . . the district judge sits as an appellate tribunal."  Rempfer v. Sharfstein, 583 F.3d 860, 865 (D.C. Cir. 2009) (quoting Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001)).  The general standard for summary judgment set forth in Rule 56 of the Federal Rules of Civil Procedure does not apply to a review of agency action.  Summary judgment nonetheless "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review."  Sierra Club v. Mainella, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (citing Richards v. INS, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977)); accord Mashpee Wampanoag Tribe v. Bernhardt, 466 F. Supp. 3d 199, 213 (D.D.C. 2020); Cottage Health Sys. v. Sebelius, 631 F. Supp. 2d 80, 89-90 (D.D.C. 2009).  In other words, "[t]he entire case on review

is a question of law." <u>Marshall Cnty. Health Care Auth. v. Shalala</u>, 988 F.2d 1221, 1226 (D.C. Cir. 1993).

Under the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  "The arbitrary and capricious standard is deferential; it requires that agency action simply be 'reasonable and reasonably explained.'" <u>Cmtys. for a Better Env't v. EPA</u>, 748 F.3d 333, 335 (D.C. Cir. 2014) (quoting <u>Nat'l Tel. Coop. Ass'n v. FCC</u>, 563 F.3d 536, 540 (D.C. Cir. 2009)); <u>see also</u> <u>Kennecott Greens Creek Min. Co. v. Mine Safety and Health Admin.</u>, 476 F.3d 946, 954 (D.C. Cir. 2007) ("[The] standard of review under the arbitrary and capricious test is only reasonableness, not perfection.").  "[A] court is not to substitute its judgment for that of the agency" if the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." <u>Airmotive Eng'g Corp. v. Fed. Aviation Admin.</u>, 882 F.3d 1157, 1159 (D.C. Cir. 2018) (quoting <u>Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983)) (internal quotation marks omitted).

"The Court's review, however, must be 'searching and careful.'" <u>Colo. River Cutthroat Trout v. Salazar</u>, 898 F. Supp. 2d 191, 199 (D.D.C. 2012) (quoting <u>Nat'l Env't. Dev. Ass'n's Clean Air Project v. EPA</u>, 686 F.3d 803, 810 (D.C. Cir. 2012)).  "An agency decision is arbitrary and capricious if it 'relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" <u>Cablevision Sys. Corp.</u>

v. FCC, 649 F.3d 695, 714 (D.C. Cir. 2011) (quoting Motor Vehicle Mfrs. Ass'n of U.S. v. State

Farm Mut. Auto. Ins. Co., 463 U.S. at 43); accord Agape Church, Inc. v. FCC, 738 F.3d 397, 410

(D.C. Cir. 2013).  Just as the Court may not "substitute [its] judgment for that of the agency" to

set aside an agency action, Rural Cellular Ass'n v. FCC, 588 F.3d 1095, 1105 (D.C. Cir. 2009), it

also may not "affirm an agency decision on a ground other than that relied upon by the agency."

Manin v. Nat'l Transp. Safety Bd., 627 F.3d 1239, 1243 (D.C. Cir. 2011).

   Courts must give "substantial deference" to an agency's "interpretation of its own

regulations, unless the agency's interpretation is 'plainly erroneous or inconsistent with the

regulation.'"  City of Oswego v. FERC, 97 F.3d 1490, 1498 (D.C. Cir. 1996) (quoting Bluestone

Energy Design, Inc. v. FERC, 74 F.3d 1288, 1292 (D.C. Cir. 1996)); see Auer v. Robbins, 519

U.S. 452, 457 (1997).  This deferential standard, however, only applies "if the regulation in

question is 'genuinely ambiguous' and if the agency's reading is reasonable."  Doe v. Sec. &

Exch. Comm'n, 28 F.4th 1306, 1311 (D.C. Cir. 2022) (quoting Kisor v. Wilkie, 588 U.S. 558,

574 (2019)).  Furthermore, "[a] court will not 'defer to a new interpretation . . . that creates

"unfair surprise" to regulated parties,' especially when 'an agency substitutes one view of a rule

for another.'"  Medica Ins. Co. v. Becerra, Civil Action No. 22-1440 (RCL), 2023 WL 6314571,

at *6 (D.D.C. Sept. 28, 2023) (quoting Kisor, 588 U.S. at 579), dismissed, No. 23-5276, 2024

WL 133680 (D.C. Cir. Jan. 11, 2024).  When Auer deference is unwarranted, "courts should not

give deference to an agency's reading, except to the extent it has the 'power to persuade.'"

Kisor, 588 U.S. at 573 (quoting Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 159

(2012)).[3]

---

   [3]  The Supreme Court's recent decision in Loper Bright Enterprises v. Raimondo,
144 S. Ct. 2244 (2024) does not affect this deferential standard.  Loper Bright presented an issue

### III.  PATH OF FUNDS

Throughout its review of the Battinenis's petitions, USCIS gave multiple reasons for its conclusion that Prakash and Rakesh had failed to provide sufficient evidence that their investments came from lawful sources.  "When an agency offers multiple grounds for a decision, [the Court] will affirm the agency so long as any one of the grounds is valid, unless it is demonstrated that the agency would not have acted on that basis if the alternative grounds were unavailable."  BDPCS, Inc. v. FCC, 351 F.3d 1177, 1183 (D.C. Cir. 2003).  In this Court, the government asserts that the primary ground for USCIS's denials was its conclusion that the Battinenis failed to demonstrate the lawful sources of the funds given to them by Mr. Seelamneni – and, for Rakesh, by Mr. Bhupatiraju as well.  Gov't MSJ at 4-7.  The Court therefore will focus its analysis on whether it was arbitrary and capricious for the agency to find that the Battinenis did not meet their burden to prove, by a preponderance of the evidence, that they acquired their investment funds from lawful sources.

---

of an agency's interpretation of a statute, not of its own regulations.  See id. at 2273 ("[C]ourts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous.").  While the D.C. Circuit does not appear to have addressed this question, other circuits have concluded that Loper Bright's concern with statutory interpretation does not impact the deference afforded to agencies interpreting their own regulations.  See, e.g., United States v. Boler, No. 23-4352, 2024 WL 3908554, at *3 n.4 (4th Cir. Aug. 23, 2024) ("Since Loper Bright dealt specifically with ambiguities in statutory directives to agencies and did not address the issue of agency interpretations of their own regulations, we will apply the Supreme Court's recent guidance in Kisor to address the issue before us today."); United States v. Trumbull, No. 23-912, 2024 WL 3894526, at *3 n.2 (9th Cir. Aug. 22, 2024) ("The Supreme Court did not call Kisor into question in Loper Bright (and in fact cited it, see id. at 2261), and as the concurrence acknowledges did not overrule it, so we continue to apply it.").

As to the regulation at issue in this case, neither the Battinenis nor the government have argued that the relevant regulation, 8 C.F.R. § 204.6(j), is ambiguous.  The Court therefore need not apply a deferential standard when applying the plain words of the regulations.  See Huashan Zhang v. United States Citizenship & Immigr. Servs., 344 F. Supp. 3d 32, 48 (D.D.C. 2018) ("[S]uch deference is only warranted if the regulation at issue is ambiguous."), aff'd, 978 F.3d 1314 (D.C. Cir. 2020).

The government argues that USCIS's denial of the Battinenis's petitions was not arbitrary and capricious, or otherwise unlawful, because it comported with what it calls the "path of funds" requirement.  See Gov't Reply at 8-11; Gov't Supp. Mem. at 3.  Under the government's approach, a petitioner must not only show that he or she obtained the EB-5 investment funds from a lawful source – typically referred to as the "source of funds" requirement – but also requires a petitioner to trace the exact dollars invested beyond his or her immediate source of funds.  See Gov't MSJ at 10-11.  The government does not state how far back a petitioner must trace the funds, but it does argue that a petitioner must "trace every penny . . . of his investment funds to lawful sources."  Gov't MSJ at 10.

### A.  The Regulation Does Not Mention "Path of Funds"

The Battinenis contend that there is "no path of funds issue" in this case because it is undisputed that they received the funds ultimately invested in the EB-5 investment from Mr. Seelamneni and Mr. Bhupatiraju – two lawful sources of funds.  See Pls.' Supp. Mem. at 3-4. The Battinenis maintain that all that is required is that they show the funds came from Mr. Seelamneni and Mr. Bhupatiraju – the Battinenis's lenders – and that those funds were loaned to the Battinenis from a lawful source.  See Pls.' Reply at 1 (arguing that the only issues before the Court are "the lawfulness of Mr. Seelamneni's funds" and "the lawfulness of Mr. Bhupatiraju's funds").  They further argue that the government's articulation of the "path of funds" requirement "confus[es] and conflat[es]" two distinct concepts found in 8 C.F.R. § 204.6(e) and 8 C.F.R. § 204.6(j)(3) – that a petitioner:  (1) must trace the EB-5 funds to a lawful source and (2) must show that the invested funds belonged to the petitioner.  Id. at 3; see Pls.' MSJ at 13 ("Defendants acted contrary to the regulation by compelling Plaintiffs to trace every single cent

of Mr. Seelamneni's wealth, instead of determining whether the funds come from unlawful activity.").

   The Court agrees with the Battinenis and concludes that the government's "path of funds" requirement is unsupported by the applicable regulations.  Neither 8 C.F.R. § 204.6(e) nor 8 C.F.R. § 204.6(j)(3) contain any reference to the "path of funds."  Section 204.6(e) – which provides the definition of "capital" – excludes from the definition "[a]ssets acquired, directly or indirectly, by unlawful means (such as criminal activities) . . . ."  8 C.F.R. § 204.6(e).  Section 204.6(j)(3) requires a petitioner "to show that the petitioner has invested, or is actively in the process of investing, capital obtained through lawful means . . . ."  8 C.F.R. § 204.6(j)(3). Section 204.6(j)(3) also lists the types of evidence a petitioner must submit, if applicable, with his or her initial application:

> (i) Foreign business registration records;
>
> (ii) Corporate, partnership (or any other entity in any form which has filed in any country or subdivision thereof any return described in this subpart), and personal tax returns including income, franchise, property (whether real, personal, or intangible), or any other tax returns of any kind filed within five years, with any taxing jurisdiction in or outside the United States by or on behalf of the petitioner;
>
> (iii) Evidence identifying any other source(s) of capital; or
>
> (iv) Certified copies of any judgments or evidence of all pending governmental civil or criminal actions, governmental administrative proceedings, and any private civil actions (pending or otherwise) involving monetary judgments against the petitioner from any court in or outside the United States within the past fifteen years.

8 C.F.R. § 204.6(j)(3)(i)-(iv).  Nothing in the text of the regulation alludes to a specific requirement to "trace every penny" of the EB-5 investment funds beyond a petitioner's immediate source of funds, see Gov't MSJ at 10; nor does it use the term "path of funds."

### B.  The Government's Arguments are Unpersuasive

The government acknowledges that the regulations themselves do not mention "path of funds."  Instead, the government makes three arguments in support of the purported "path of funds" requirement.  First, the government argues that the "path of funds requirement follows from two premises:  (1) a petitioner's investment capital must be 'lawfully obtained,' and (2) a petitioner bears the burden to prove that he or she satisfies the EB-5 program's requirements."  Gov't Supp. Mem. at 3 (internal citations omitted).  The government's first premise – the "source of the funds" requirement of the regulation – is a rather narrow inquiry into whether a petitioner's source of funds was lawful.  Its second premise – that a petitioner must prove the lawfulness of the funds by a preponderance of the evidence – is unremarkable and is also found in the regulations themselves.  See 8 C.F.R. § 103.2(b)(1); see also Kara v. United States Citizenship & Immigr. Servs., Civil Action No. 20-20611, 2020 WL 7711661, at *3 (S.D. Fla. Dec. 29, 2020) (affirming USCIS's denial of petitioner's application where petitioner "did not provide any additional documentation that the funds did in fact originate from a lawful source"), aff'd, 2021 WL 3286283 (11th Cir. Aug. 2, 2021); Spencer Enterprises, Inc. v. United States, 229 F. Supp. 2d 1025, 1039 (E.D. Cal. 2001) (finding that a petitioner "must present clear documentary evidence of the source of the funds she invests"), aff'd, 345 F.3d 683 (9th Cir. 2003).

The government's argument essentially asks the Court to transform these narrow inquiries into a substantive requirement that a petitioner trace the exact investment funds – the actual dollars – back to some indefinite period earlier than the immediate source from which a petitioner obtained the funds.  To the extent that this argument is based on the regulation's requirement that a petitioner bears the burden to "show" they are investing "capital obtained

through lawful means," 8 C.F.R. § 204.6(j)(3), it makes no sense.  Setting aside the breadth of

the government's proffered expanded interpretation, the regulations strongly suggests that the

inquiry is intended to focus solely on a petitioner's <u>immediate</u> source of funds, <u>not</u> an

individual's or entity's source of funds at some earlier point in time.  For example, Section

204.6(j)(3) – in listing the types of evidence a petitioner must submit to "show" that he or she is

investing "capital obtained through lawful means" – identifies "personal tax returns [filed] . . . by

or on behalf of the petitioner" as appropriate evidence to show the lawful source of the

investment funds.  <u>See</u> 8 C.F.R. § 204.6(j)(3)(ii).  Another subsection states that "[c]ertified

copies of any judgments . . . and any private civil actions (pending or otherwise) involving

monetary judgments against the petitioner" should be submitted.  <u>See</u> 8 C.F.R. § 204.6(j)(3)(iv).

These provisions are strong indicators that the regulations do not require an extensive tracing

requirement extending back beyond the petitioner's immediate source of funds.

Second, the government argues that its interpretation is supported by

administrative decisions from the Board of Immigration Appeals ("BIA").  The government

notes that "the first case to articulate the 'path of funds' requirement" was <u>In re Izummi</u>, 22

I. & N. Dec. 169 (BIA 1998), <u>see</u> Gov't Supp. Mem. at 2, and that "[s]ince <u>Izummi</u>, the Board

consistently has held that a petitioner must document the complete path of his or her investment

funds to meet his or her burden to prove that such investment funds derive from lawful sources."

<u>Id</u>. at 3.  But that is not what the BIA held in <u>Izummi</u>.  The BIA in <u>Izummi</u> addressed a separate

issue – namely, whether the funds invested by the petitioner were "his own funds."  <u>See</u>

<u>In re Izummi</u>, 22 I. & N. Dec. at 195.  The BIA summarized its concern with the sufficiency of

the evidence provided by Izummi, stating:

> While the record contains a letter from Wells Fargo Bank dated
> October 14, 1997, acknowledging the receipt of $120,000 and

> advising the petitioner that the funds had been deposited into a
> custody account, the record does not reveal from where these funds
> originated.  It is not known if the money came from the petitioner's
> overseas accounts, from his U.S. accounts, or from some other
> source.  As the petitioner has not documented the path of the funds,
> such as by wire-transfer records, the petitioner has failed to meet his
> burden of establishing that the initial $120,000 were his own funds.

Id.  In other words, the concern expressed by the BIA in Izummi was about the petitioner's

ownership of the funds – not the lawfulness of the source of funds.  As the Battinenis explain:

> In re Izummi [ ] states that the path of the funds requirement is to
> prove that the money really came from the person who alleges to
> have provided the capital.  In this case, the money clearly came from
> Mr. Seelamneni. . . .  There is no requirement in Izummi or
> elsewhere that the source or path of funds requirement somehow
> requires proving exactly which dollars within a bank account were
> used.

Pls.' Supp. Mem. at 3-4; see also Sadeghzadeh v. United States Citizenship & Immigr. Servs.,

322 F. Supp. 3d 12, 18 n.5 (D.D.C. 2018) ("Plaintiff is correct that Izummi primarily concerned

unsettled questions about how the petitioner had obtained the invested funds in the first place.");

In re [Redacted], 2001 WL 34078025, at *18 (BIA Jan. 8, 2001) ("Without documentation of the

path of the funds, the petitioner cannot meet his burden of establishing that the funds are his own

funds.") (citing In re Izummi, 22 I. & N. Dec. at 195).

    USCIS, in its decision denying the Battinenis's petition, acknowledged that the

"path of funds" requirement involves an inquiry into a petitioner's ownership of the funds, not

the lawfulness of the source of funds.  See Prakash AR at 3144 ("To show that the capital was

his or her own, Petitioner must document the path of funds."); Rakesh AR at 2929 (same).  Both

parties note that there is no dispute that the funds were obtained from Mr. Seelamneni and Mr.

Bhupatiraju through a valid loan agreement.  See Pls.' Supp. Mem. at 3; Gov't MSJ at 4

("USCIS . . . did not ultimately deny Prakash's petition on the ground that he had failed to prove that the transaction was a loan.").

Third, the government argues that the "path of funds" requirement is supported by case law. See Gov't Supp. Mem. at 3-4. Although several cases have discussed a "path of funds" requirement, none of the cases involved instances where USCIS required a petitioner to trace the path of funds back earlier than the petitioner's immediate source of funds. For example, in Borushevskyi, the case ultimately boiled down to whether the petitioner had provided sufficient evidence to show by a preponderance of the evidence that the source of funds was lawful. See Borushevskyi v. United States Citizenship & Immigr. Servs., 664 F. Supp. 3d 117, 123-24 (D.D.C. 2023), aff'd, No. 23-5116, 2024 WL 2762146 (D.C. Cir. May 30, 2024). Judge Sullivan, in adopting Magistrate Judge Faruqui's Report and Recommendation, considered whether USCIS's denial of an EB-5 petition was reasonable where a petitioner failed to provide evidence showing that the EB-5 investment funds – which petitioner had most recently received from a company in the form of a refund following a contract cancellation – were originally obtained from a lawful source. See id. at 123-24. In the course of his analysis, Judge Sullivan noted that under the regulations and administrative decisions, a petitioner must "establish the source of the funds . . . to demonstrate that the funds were obtained through lawful means," id. at 129, and that this may be "demonstrated by documenting the complete path of the funds." Id.

The issue presented in Borushevskyi, however, was only whether petitioner had sufficiently documented the source of his funds to USCIS, not – as here – whether petitioner presented evidence tracing the funds back beyond the point of acquisition. Judge Sullivan concluded that USCIS's decision denying the petition was reasonable because petitioner had not

presented sufficient evidence of the source of funds.  As Magistrate Judge Faruqui stated in the

Report and Recommendation adopted by Judge Sullivan:

> Mr. Borushevskyi was not facing an impossible task.  For example,
> he could have presented bank account statements showing the
> accumulation of his earnings over the prior five years and showing
> a withdrawal or withdrawals in February 2014 totaling $610,000.
> This would have linked his lawful income to the returned funds.
> This is what USCIS sought but did not receive.  USCIS neither
> demanded "certainty" nor "the precise historical path of every
> dollar."  The objective evidence shows only that $610,000 went to
> Craft LMG from some unknown source or sources.  An acceptable
> source would have been a specific bank account or cash, not merely
> the description "from their kitchenware import and sales business."

Id. at 141 (internal citations omitted); see id. at 131 ("In other words, USCIS had no objective

evidence in the record to show that Mr. Borushevskyi possessed the funds used to pay Craft

LMG.").[4]

   The district court's decision in Jian Zhang is also instructive on the issue of the

sufficiency of the evidence needed to show that EB-5 investment funds derived from a lawful

source.  See Jian Zhang v. Nielsen, Civil Action No. 18-9799, 2019 WL 5303276, at *7-8

(C.D. Cal. Oct. 17, 2019).  In that case, the petitioner had acquired his EB-5 investment funds

from a loan he received from a company in which he owned 64.51 percent of the shares.  See id.

at *2.  The shares were acquired with funds that were gifted to him from his father.  See id.  The

court concluded that USCIS's denial of the EB-5 petition was reasonable because petitioner

"failed to provide sufficient evidentiary support establishing the lawful source of

---

[4]   The government provided a notice of supplemental authority following the D.C.
Circuit's decision upholding the district court decision in Borushevskyi.  See Gov't Not. of Supp.
Authority (citing Borushevskyi v. USCIS, No. 23-5116, 2024 WL 2762146, at *1 (D.C. Cir. May
30, 2024) (per curiam)).  As discussed above, the EB-5 petition in that case was denied because
the petitioner was unable to show the source of his investment funds.  The D.C. Circuit's
decision "upholding the . . . 'path of funds' requirement" therefore only concerns the narrow
inquiry of whether the petitioner had adequately shown the lawful "source of funds."

the . . . [father]'s accumulated wealth between 1985 and 2003."  Id. at *7.  In other words,

USCIS's decision was based on the fact that petitioner failed to show by a preponderance of the

evidence that his immediate source of investment funds, his father, was a lawful source – not that

petitioner failed to show that his father had lawfully acquired the actual funds petitioner later

used to invest in the EB-5 investment.  See id. at *3 ("[T]he record did not contain sufficient

evidence to demonstrate the source of funds [Plaintiff] used to initially invest in the

company . . .  Moreover, the record did not contain any probative evidence to demonstrate the

initial investment funds were derived from [his father].") (citation omitted).

   The cases cited by the government generally fall into two categories, neither of

which support its articulation of the "path of funds" requirement nor show that "every [c]ourt to

address the question has concluded that this requirement either follows from, or is at least a

reasonable interpretation of, 8 C.F.R. § 204.6's plain language."  See Gov't Supp. Mem. at 4.

The first set of cases arose where USCIS was concerned about whether a petitioner obtained the

EB-5 investment funds from a lawful source – that is, "source of funds" cases.  See, e.g., Jian

Zhang v. Nielsen, 2019 WL 5303276, at *7; Borushevskyi v. United States Citizenship &

Immigr. Servs., 664 F. Supp. 3d at 129; Mo v. United States Citizenship & Immigr. Servs.,

Civil Action No. 22-1342 (JEB), 2024 WL 804267, at *4 (D.D.C. Feb. 27, 2024) (affirming

agency denial of petitioner's application because, inter alia, the petitioner was not able to "prove

the legality of the source of funds for the $8,500 and $36,500.37 deposits he received and

eventually transmitted to the NCE"); Nguyen v. United States Citizenship & Immigr. Servs., 637

F. Supp. 3d 822, 835 (C.D. Cal. 2022) (affirming USCIS's denial of petitioner application where

the petitioner's transfer of funds to a currency exchange "caus[ed] a clear break in the source,

custody, and ownership of Plaintiff's funds," and that there therefore was no evidence that the

funds invested "were obtained from a lawful source"), aff'd, No. 22-56068, 2023 WL 8251320 (9th Cir. Nov. 29, 2023); Kara v. United States Citizenship & Immigr. Servs., 2020 WL 7711661, at *3 (affirming USCIS's denial of petitioner's application where petitioner – using funds that were commingled with other funds that were "tied to the illegal narcotics trade" – "did not provide any additional documentation that the funds did in fact originate from a lawful source"); Kim v. Baran, Civil Action No. 13-1752, 2014 WL 12573361, at *3-5 (C.D. Cal. Aug. 13, 2014) (affirming USCIS's decision where petitioner failed to provide evidence showing that the EB-5 investment funds derived from corporate dividend payments, that "the funds used to purchase shares of the relevant companies" were of lawful origin, and that petitioner had in fact moved funds from one of his accounts to another"); see also Binbin Lei v. United States Citizenship & Immigr. Servs., 2017 WL 5957641, at *4 (C.D. Cal. Mar. 23, 2017) (affirming USCIS's decision where a petitioner, who received the EB-5 investment funds from her husband, failed to provide evidence rectifying recording discrepancies in the husband's checking account).[5]

The second set of cases involved circumstances in which USCIS was unable to determine whether a petitioner actually owned the funds they invested – occasionally referred to as "path of funds." Because the issue in these cases was ownership – not lawful source of funds – they are consistent with the BIA's holding in Izummi. See, e.g., Truong v. United States

---

[5]     The district court decision in Binbin Lei was ultimately more concerned with particular evidentiary problems rather than on the exact bounds of the "source of funds" requirement at issue here. As the Ninth Circuit summarized in affirming the district court, the discrepancies in the record – including "missing transactions and differing bank letterheads" – "reasonably led USCIS to conclude that Lei failed to meet her burden to establish by a preponderance of the evidence that the funds for her investment were derived from a lawful source." Binbin Lei v. United States Citizenship & Immigr. Servs., 740 F. App'x 578, 579 (9th Cir. 2018).

Citizenship & Immigr. Servs., Civil Action No. 21-316 (RC), 2023 WL 4234658, at *7

(D.D.C. June 28, 2023) ("[I]n the agency's judgment, [petitioner] provided inadequate

documentation showing whether the funds transferred to the U.S. business were even owned by

[her] at all.") (citation and quotation marks omitted); Sadeghzadeh v. United States Citizenship

& Immigr. Servs., 322 F. Supp. 3d at 18 (finding "[USCIS Administrative Appeals Office] was

well within its discretion to demand evidence to fill that evidentiary gap" where "no record

showed how the funds made their way from her bank account in Iran to the wiring companies in

Dubai").

      Although both sets of cases involved tracing the funds from a lawful source or a

petitioner's financial account to the EB-5 investment, none of the cases discussed a requirement

that a petitioner trace the exact funds back beyond the immediate point of acquisition.  The

government's reading of these cases suggest it is "conflating" the requirements that:  (1) a

petitioner must show that their investment funds were obtained from a lawful source (source of

funds) and (2) a petitioner must show the investment funds are their own (the standard set forth

in Izummi).  See Pls.' Supp. Mem. at 2.  As Judge Bates succinctly put it, albeit in a somewhat

different context:

>In the end, USCIS has acted in a manner that conflicts with the plain
>language of its regulations, that is not compelled by statutory or
>regulatory purpose, that unreasonably stretches the rationale of
>Matter of Izummi, and that runs counter to the evidence in the
>record.  This action accordingly cannot survive review.

Chiayu Chang v. United States Citizenship & Immigr. Servs., 289 F. Supp. 3d 177, 188 (D.D.C.

2018); see Siqing Wang v. United States Citizenship & Immigr. Servs., 366 F. Supp. 3d 118, 122

(D.D.C. 2019) ("The Court will not defer to USCIS's briefing because it 'appears to be nothing

more than an agency's convenient litigating position.'") (quoting <u>Bowen v. Georgetown Univ.</u>
<u>Hosp.</u>, 488 U.S. 204, 213 (1988)).

        In sum, the Court concludes that while the regulations require a petitioner to
"show" that their funds were obtained from a lawful source, they do not require the petitioner to
"trace every penny" beyond their initial acquisition.  <u>See</u> Gov't MSJ at 10.  The fundamental
flaw in USCIS's reasoning is that it wrongly concluded that the Battineni's "source of funds"
had to be traced back to persons and entities who provided funds to Mr. Seelamneni and Mr.
Bhupatiraju even though Mr. Seelamneni and Mr. Bhupatiraju were the only sources of funds
who were appropriate to consider.  And that incorrect premise largely – though not exclusively in
the context of the funds received from Mr. Bhupatiraju – drove the ultimate finding that the
Battinenis offered insufficient evidence to show that their sources of funds were lawful.  With
respect to Prakash, USCIS incorrectly and repeatedly said that petitioner was required to provide
evidence of where Mr. Seelamneni obtained the funds he lent to Prakash.  <u>See</u> Prakash AR at
1593 (stating that petitioner failed to provide additional documentation showing the source of
funds Mr. Seelamneni deposited into his accounts); <u>id</u>. at 1604-05 (stating that petitioner failed to
show the "source of the deposits" made into Mr. Seelamneni's bank accounts); <u>see also</u> <u>id</u>. at
1183, 1592, 1594.  As for Rakesh, USCIS relied on the same flawed premise – both with respect
to Mr. Seelamneni and Mr. Bhupatiraju.  <u>See</u> Rakesh AR at 1411 (stating that petitioner failed to
demonstrate "the actual source of the $7,000 for Mr. Ravi Bhupatiraju's loan to Petitioner"); <u>id</u>.
at 1424 (same).  As to evidence that Mr. Seelamneni received $25,000 of the $40,000 he loaned
to Rakesh from the repayment of a loan from Srinivasu Kaja, <u>see</u> <u>id</u>. at 1425, USCIS stated that
petitioner was required to provide evidence "about the source of Kaja's funds."  <u>Id</u>.  As the
foregoing analysis shows, neither the regulations nor the case law require petitioners to provide

any such evidence.  All that was required was to show that Mr. Seelamneni and Mr. Bhupatiraju themselves were lawful sources of the funds.  With the foregoing analysis in mind, the Court will now consider USCIS's bases for denying each of the petitions.

## IV.  THE BATTINENIS'S PETITIONS

Preliminarily, the Court notes that the Battinenis devote a substantial portion of their reply and cross-response to alleged factual errors made by the government in characterizing Mr. Seelamneni's letter describing the source of the loan funds.  See Pls.' Reply at 2-7.  They point both to the decisions of USCIS and to the government's submissions to this Court.  Id.  In its final denial, USCIS wrote that Mr. Seelamneni "stated that he received a deposit for $107,412 and a transfer from a closed out brokerage account of $14,450."  Prakash AR at 3146.  And the government, in its motion for summary judgment and cross-response in this case, wrote that Mr. Seelamneni "assert[ed] that he had received rent deposits of $107,412 and $14,450 from 'properties and other investments.'"  Gov't MSJ at 4.

The government now concedes that USCIS's statement was erroneous.  See Gov't Reply at 4.  The $107,412, not the $14,450, was the amount Mr. Seelamneni told the agency came from his closed brokerage account.  Prakash AR at 1247.  And Mr. Seelamneni characterized the $14,450 as a "transfer . . . from [his] credit card" – neither a deposit nor a brokerage account transfer.  Id.  These errors, however, do not warrant relief because they were harmless.  USCIS concluded that none of the deposits described by Mr. Seelamneni were accompanied by adequate documentation.  The agency's reasoning therefore did not depend on which of the amounts reflected in Mr. Seelamneni's bank statements came from which of these sources.  While the Battinenis have successfully identified an error in the administrative record,

this error was not prejudicial.  See RadNet Mgmt., Inc. v. Nat'l Lab. Rels. Bd., 992 F.3d 1114, 1124 (D.C. Cir. 2021).[6]

### A.  Prakash Battineni

USCIS acted arbitrarily and capriciously in concluding that Prakash failed to establish that Mr. Seelamneni's loan funds came from lawful sources, and that Prakash therefore had failed to establish that his own investment came from lawful sources.  The "source of funds" at issue was the $40,000 Mr. Seelamneni loaned to Prakash from his Wells Fargo account.  Prakash then used these funds to invest in and loan to EDGE IT.  To prove that Mr. Seelamneni was a lawful source of funds, Prakash submitted the following evidence that was considered by USCIS in its decision:  (1) bank statements from Mr. Seelamneni's Wells Fargo account – the account from which Mr. Seelamneni loaned Prakash the money – for the period of January 1, 2015 to April 30, 2015, and December 1 to 31, 2015, see Prakash AR at 1427, 1452-94, 3146; (2) bank statements from Mr. Seelamneni's DCU account for the same time period, see id. at 1432-50; (3) Mr. Seelamneni's 2014 Form W-2 documenting his employment wages from his position at the Office of Personnel Management, see id. at 1429-30; and (4) a letter written by Mr. Seelamneni summarizing, inter alia, two larger deposits into his Wells Fargo account,

---

[6]  The Battinenis also argue that the characterization of Mr. Seelamneni's statement made by the government in its brief is inaccurate.  See Pls.' Reply at 3-4.  The Court need not decide this matter.  It is the agency's decisionmaking process – not the government's lawyers' characterization of that process – that is at issue here.  "In assessing the legality of agency action, this court must look not to the reasons advanced by counsel, but rather to those in fact relied on by the agency in question."  Compania de Gas de Nuevo Laredo, S. A. v. FERC, 606 F.2d 1024, 1031 (D.C. Cir. 1979).

$107,412 from a brokerage account Mr. Seelamneni closed and $14,450 from a "cash transfer" from his credit card account.  See id. at 1427.[7]

After reviewing this evidence, USCIS determined that Prakash "failed to demonstrate that it is more likely than not that the funds invested . . . were obtained through lawful means."  Prakash AR at 3147.  The core of USCIS's analysis centered on the Wells Fargo account and Mr. Seelamneni's explanation of the two large transfers into that account.  See id. at 3146-47.  USCIS determined that the Wells Fargo bank statements did "not corroborate" the assertions made by Mr. Seelamneni in his letter because the bank statements only contained general descriptions of the deposits and did "not provide any other details showing the source of the deposit[s]."  Id. at 3146.  Without explicitly addressing the Form W-2 showing Mr. Seelamneni's 2014 annual income or the DCU bank statements, USCIS concluded that the evidence was insufficient "to verify the path of funds [and] whether the funds transferred to Petitioner derive either from Seelamneni's employment, rental payments, a brokerage account, or from some other sources."  Id. at 3147.

_____

[7]      The Battinenis argue that USCIS acted arbitrarily and capriciously by failing to consider Mr. Seelamneni's government employment, particularly his work with the Financial Crimes Enforcement Network, in which his role was to "safeguard the financial system."  Pls.' Reply at 10.  The administrative record, however, shows otherwise.  For both Prakash and Rakesh, USCIS wrote:

> Petitioner stated that there was a "strong presumption" that Mr. Seelamneni's funds were lawfully earned since he is a federal employee subject to extensive background checks and had a federal job for a long enough time that a reasonable person would conclude that he could have amassed $40,000 to make the initial loan.  No other documentary evidence was provided.

Prakash AR at 3147; Rakesh AR at 2932.  The explanation given by the agency shows that it did consider the nature of Mr. Seelamneni's employment, but it decided that Mr. Seelamneni's occupations could not overcome the lack of documentation of his loan funds.  The Court cannot find that such a determination was error.

As explained in Section III of this Opinion, USCIS's insistence that Prakash trace the "path of funds" beyond the immediate source to sources earlier than the loan from Mr. Seelamneni was premised on an incorrect interpretation of the applicable regulations and case law.  USCIS's decision therefore "cannot survive review."  Chiayu Chang v. United States Citizenship & Immigr. Servs., 289 F. Supp. 3d at 188; see Huashan Zhang v. United States Citizenship & Immigr. Servs., 344 F. Supp. 3d at 56 ("As such, its interpretation is plainly erroneous, and its denials based on that interpretation are arbitrary and capricious.").  USCIS's decision was not based on Prakash submitting insufficient evidence to show that he obtained the funds through a lawful loan.  Cf. In re [Redacted], 2001 WL 34078025, at *18 (BIA Jan. 8, 2001) (finding petitioner failed to show "source of funds" where "petitioner did not provide any verification of his employment, the size and nature of his business, or of his income from that employment.").  Nor was the decision based on the fact that USCIS concluded there was insufficient evidence showing that Mr. Seelamneni was capable of providing the $40,000 loan from funds acquired through his employment.  See Gov't MSJ at 15 (arguing that it is "not enough to prove" that Mr. Seelamneni "could" have had lawful sources of funds).  Rather, USCIS's denial was based entirely on its unjustified and unreasonable interpretation of the regulations and case law that the "source of funds" requirement requires a petitioner to trace "every penny" to a lawful source beyond the petitioner's immediate source of funds.  The decision was arbitrary and capricious and therefore must be vacated.  See Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin., 494 F.3d 188, 203 (D.C. Cir. 2007) ("To satisfy the APA's 'arbitrary and capricious' standard, an agency must 'articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'") (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463

U.S. at 43); accord Powder River Basin Resource Council v. U.S. Dep't of Interior,

Civil Action No. 22-2696 (TSC), 2024 WL 4188655, at *6 (D.D.C. Sept. 13, 2024).

### B.  Rakesh Battineni

USCIS did not act arbitrarily and capriciously in concluding that Rakesh failed to

establish that his relevant loan funds came from lawful sources, and that Rakesh therefore had

failed to establish that his own investment came from lawful sources.  Rakesh received funds

from both Mr. Seelamneni and Mr. Bhupatiraju, making the issues in his petition distinct from

those presented in Prakash's petition.  USCIS determined that Rakesh had not provided sufficient

evidence to show by a preponderance of the evidence that either source was lawful.

Of the $40,000 loan Rakesh used to invest in and loan to EDGE IT, $33,000 came

from Mr. Seelamneni and $7,000 came from Mr. Bhupatiraju.  Starting with the funds received

from Mr. Seelamneni, Rakesh submitted substantially the same documentation that Prakash

provided in his petition.  See Rakesh AR at 2930.  Rakesh also included a separate letter from

Mr. Seelamneni explaining the source of the funds Mr. Seelamneni had used to loan to Rakesh.

See id. at 1274.  Mr. Seelamneni's bank statements showed:  a $50,000 withdrawal from his

Wells Fargo account and corresponding deposit into his DCU account on January 30, 2015, id. at

1284, 1302; a number of redacted deposits into and withdrawals from his DCU account that left

the balance of the account at $4,588.00 by the end of February 2015, id. at 1284; three salary

deposits into the DCU account between March 1, 2015, and April 9, 2015, each for $3,259.83,

id. at 1288, 1292; and a $25,000 deposit into his DCU account on March 30, 2015.  Id. at 1288.

As for the $25,000 deposited on March 30, 2015, Mr. Seelamneni stated in his letter that this was

from the repayment of a loan he had made to his friend, Srinivasu Kaja.  See id. at 1274.  Rakesh

provided USCIS with a bank statement from Mr. Kaja documenting this transfer of funds.  See id. at 1345-46.

USCIS determined that the evidence was insufficient to conclude that the $33,000 of loan funds were from a lawful source.  First, USCIS found that it could not verify that the $50,000 in Mr. Seelamneni's Wells Fargo account – which Mr. Seelamneni stated was acquired through the closing of a brokerage account, see id. at 1274 – were the exact funds loaned to Rakesh.  In relevant part, USCIS stated that because of the "redactions on the account statements, the nature of any other transactions were unclear and it appeared that the $50,000 from Seelamneni's closed brokerage account was taken out before" Mr. Seelamneni loaned the funds to Rakesh.  Id. at 2931.  Second, related to the $25,000 loan repayment from Mr. Kaja, USCIS determined that the record did not contain any documentation of this loan nor any evidence "document[ing] the source of Kaja's funds."  Id.  In other words, "[t]he documents were [ ] insufficient to demonstrate the source of funds received from Kaja or from Seelamneni."  Id.  Third, USCIS concluded that because of redactions in Mr. Seelamneni's DCU bank statements, it was "unclear how much of the funds transferred to Petitioner derive[d] from salary deposits."  Id.

USCIS's reasoning as to Mr. Seelamneni's funds was substantially the same as its analysis with respect to Prakash's petition.  The core of USCIS's findings was that Rakesh failed to trace the particular loan funds to a particular income stream of Mr. Seelamneni.  As previously discussed in Section III, such a requirement is not supported by the regulations and case law. The denial of the petition on this basis therefore was arbitrary and capricious.  The Court concludes, however, that such error does not require it to vacate USCIS's decision with respect to Rakesh because the error was harmless.  See First Am. Disc. Corp. v. Commodity Futures

Trading Comm'n, 222 F.3d 1008, 1015 (D.C. Cir. 2000) ("As incorporated into the APA, the harmless error rule requires the party asserting error to demonstrate prejudice from the error.") (citation and quotation marks omitted).

In addition to the $33,000 he received from Mr. Seelamneni, Rakesh received $7,000 from Mr. Bhupatiraju, a man whom Rakesh did not even know.  See Rakesh AR at 827-28.  Rakesh submitted three pieces of evidence to show the lawfulness of these funds:  (1) a letter from Mr. Bhupatiraju, see id. at 1348; (2) a photograph of a check for $5,993.38 issued to Mr. Bhupatiraju from his purported employer, Geico, see id. at 1349; and (3) a photograph of Mr. Bhupatiraju's Virginia driver's license.  See id. at 1350.[8]  In his letter, Mr. Bhupatiraju explained that he transferred $7,000 to Rakesh at the instruction of Mr. Seelamneni as repayment of a loan Mr. Seelamneni had given to Mr. Bhupatiraju.  See id. at 1349.  USCIS determined that this evidence failed to show that Mr. Bhupatiraju was a lawful source of funds.  See Rakesh AR at 2931-32.  In particular, USCIS did not credit Mr. Bhupatiraju's "assert[ion] that he derived the transferred funds through his employment income . . . ."  Id. at 2931.  Furthermore, USCIS found that the single check for $5,993.38 – approximately $1,000 less than the total amount transferred to Rakesh – failed to "demonstrate that Bhupatiraju accumulated and maintained his employment income" such that he had sufficient lawful funds to transfer to Rakesh.  Id.

The Court concludes that USCIS acted reasonably in determining that there was insufficient evidence to establish that Mr. Bhupatiraju was a lawful source of funds.  In light of the absence of "clear documentary evidence of the source of the funds," Borushevskyi v. United States Citizenship & Immigr. Servs., 664 F. Supp. 3d at 129 (citing Matter of Soffici,

---

[8]     The Battinenis at one point state that the letter provided by Mr. Bhupatiraju was an "affidavit."  See Pls.' Reply at 14.  Nothing in Mr. Bhupatiraju's submission, however, suggests that the statement was sworn under penalty of perjury.  See Gov't Reply at 3.

22 I. & N. Dec. 158 (1998)), USCIS was not obligated to accept the assertions made by Mr. Bhupatiraju that the funds transferred to Rakesh were derived from his employment income and transferred at the request of Mr. Seelamneni.  The only evidence submitted purportedly showing that Mr. Bhupatiraju had accumulated a sufficient amount of lawful funds necessary to transfer to Rakesh was the single check for $5,993.38, which USCIS reasonably determined was insufficient evidence to show that Mr. Bhupatiraju was a lawful source of funds.  As USCIS stated in denying Rakesh's earlier motion to reopen and reconsider his application:  "The record [did] not contain sufficient evidence to demonstrate that Mr. Bhupatiraju received adequate income from his employment to provide a $7,000 loan, that taxes were paid on the employment income, or that he actually accumulated and maintained his employment income and used the employment income as the source of the loan to Petitioner."  Rakesh AR at 1412.

The issue of Mr. Bhupatiraju's accumulation of funds is distinct from whether there was sufficient evidence "tracing every penny" of the funds Mr. Bhupatiraju provided to a lawful source.  In light of the limited evidence provided with respect to Mr. Bhupatiraju's level of income and wealth, USCIS could reasonably have concluded that Rakesh failed to show that Mr. Bhupatiraju was a lawful source of funds.  See Jian Zhang v. Nielsen, 2019 WL 5303276, at *7 (upholding agency denial of petition where petitioner "failed to provide sufficient evidentiary support establishing the lawful source of . . . [his father's] accumulated wealth."); R.L. Inv. Ltd. Partners v. I.N.S., 86 F. Supp. 2d 1014, 1025 (D. Haw. 2000), aff'd, 273 F.3d 874 (9th Cir. 2001) (upholding agency denial of petition where petitioner failed to provide evidence of the "level of income" of the individual who gifted petitioner the funds); Mo v. United States Citizenship & Immigr. Servs., 2024 WL 804267, at *4 (upholding agency determination where petitioner was

unable to "prove the legality of the source of funds"). The Court therefore concludes that USCIS acted reasonably in denying Rakesh's petition.

## V.  REOPENING PETITIONS

The Battinenis argue that USCIS's decision to reopen their petitions was a violation of the agency's own regulations on reopenings. Pls.' MSJ at 18; see C.F.R. §§ 103.5(a)(2), 103.2(b)(16).[9] The government counters that these regulations do not apply because USCIS's revisiting of the petitions was not a "reopening" in the formal sense. Gov. MSJ at 22. Instead, it was a "reconsideration" based in the agency's "inherent authority to revisit [its] prior decisions." Ivy Sports Med., LLC v. Burwell, 767 F.3d 81, 86 (D.C. Cir. 2014); see also Sanchez v. I.N.S., 707 F.2d 1523, 1529 (D.C. Cir. 1983) (differentiating between "motion[s] to reopen," which must "state the new facts to be proved," and "motion[s] to reconsider," which need not do so and must instead "state the reasons upon which the motion is based").

The Battinenis's argument on this point is not a model of clarity, and they do not appear to substantively pursue the argument in their reply memorandum. The original argument appears to be that USCIS's motivation for reopening the petitions was to (1) "re-litigate the old facts that had already been litigated" in a separate action, Bell Info Solutions, LLC v. United States Citizenship and Immigration Service, Civil Action No. 19-2916 (JDB) (D.D.C.); and (2) "bring back into controversy the irrelevant issue of whether the repaid loan was really a

---

[9]       The Battinenis also argue that the agency did not provide them with thirty days' notice before reopening the petitions. Pls.' MSJ at 18. As the government points out, however, the relevant regulation requires only that USCIS "give the affected party 30 days after service of the motion to submit a brief." 8 C.F.R. § 103.5(a)(5)(ii); see Gov't MSJ at 23. USCIS gave the Battinenis thirty-three days after its Notice of Intent to Deny the reopened petition to respond, and therefore met this requirement assuming it applies here. See Prakash AR at 1596; Rakesh AR at 1415.

loan."  See Pls.' MSJ at 18-19.  As to the first argument, the Battinenis concede that USCIS "did

not make reference" to the arguments made in Bell Info Solutions, and that therefore, the issue

"is no longer relevant."  See Pl. MSJ at 18; see also Gov't MSJ at 22 n.4.  As to the second

argument, which appears to relate to the Battinenis's characterization of USCIS's contention that

Mr. Seelamneni's loan was insufficiently documented, see Prakash AR at 3146, this is no longer

at issue.  The Battinenis therefore have made no plausible showing of harm from the agency's

decision to revisit its denial of their I-526 petitions.  The Court therefore need not determine

whether USCIS's decision to revisit the Battinenis's petitions was subject to the regulations

because, even if it was, any violation of those regulations was harmless.  See First Am. Disc.

Corp. v. Commodity Futures Trading Comm'n, 222 F.3d at 1015.


## VI.  CONCLUSION

Having determined that USCIS acted arbitrarily and capriciously in denying

Prakash's petition, the Court must consider the appropriate remedy.  The Battinenis request that

the Court order USCIS to reopen and approve Prakash's petition.  See Pls.' MSJ at 23.  Such a

remedy is inappropriate under the circumstances.  The Supreme Court has instructed that where

"the record before the agency does not support the agency action, . . . the proper course, except

in rare circumstances, is to remand to the agency for additional investigation or explanation."

Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985); accord Cty. of Los Angeles v.

Shalala, 192 F.3d 1005, 1023 (D.C. Cir. 1999).  "This is especially the case 'in the field of

immigration,' where 'there may be sensitive issues lurking that are beyond the ken of the court.'"

Huashan Zhang v. United States Citizenship & Immigr. Servs., 344 F. Supp. 3d at 60 (quoting

Fox v. Clinton, 684 F.3d 67, 80 (D.C. Cir. 2012)).  It is therefore "the normal remedy . . . to

vacate [USCIS's] decision and remand it for reconsideration."  Thatikonda v. United States

Citizen &, Immigr. Servs., Civil Action No. 19-685 (RC), 2020 WL 2126716, at *6 (D.D.C. May 5, 2020); see Nat'l Venture Cap. Ass'n v. Duke, 291 F. Supp. 3d 5, 20 (D.D.C. 2017) (concluding that the "practice of the court is ordinarily to vacate the rule" unless, inter alia, "the disruptive consequences of an interim change" caution against vacatur); Medica Ins. Co. v. Becerra, 2023 WL 6314571, at *14 (vacating and remanding after concluding agency action was arbitrary and capricious); Siqing Wang v. United States Citizenship & Immigr. Servs., 366 F. Supp. 3d at 122.

Because the Court has concluded that USCIS's decision to deny Prakash Battineni's petition was arbitrary and capricious, Plaintiffs' Motion for Summary Judgment [Dkt. No. 20] is granted in part and denied in part. USCIS's decision as to Prakash Battineni's petition is VACATED and the matter is REMANDED for proceedings consistent with this Opinion. Because the Court has concluded that USCIS's denial of Rakesh Battineni's petition was not arbitrary and capricious, the government's Cross-Motion for Summary Judgment [Dkt. No. 22] is granted in part and denied in part.

An Order consistent with this Opinion was issued on September 30, 2024. See September 30, 2024 Order [Dkt. No. 33].

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 10/2/24